Robin LUBIN, Plaintiff,

v.

AMERICAN PACKAGING CORPORATION, Defendant.

Civ. A. No. 90–5955.

United States District Court, E.D. Pennsylvania.

March 8, 1991.

Patricia V. Pierce, Philadelphia, Pa., for plaintiff.

Ronald H. Surkin, Rose Tree Corporate Center, Media, Pa., for defendant.

## MEMORANDUM

RAYMOND J. BRODERICK, District Judge.

The plaintiff, Robin Lubin, pursuant to a stipulation of the parties, filed a second amended complaint in the above-captioned matter containing four counts, all alleging that the defendant, American Packaging Corporation, terminated her employment and denied her certain benefits as a result of her prolonged absence from work due to a complicated pregnancy. Count I of the plaintiff's second amended complaint alleges discrimination on the basis of sex in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* ("Title VII"). Count II alleges unlawful discrimination in violation of the Equal Pay Act of 1963, 29 U.S.C. § 206(d)(1). Count III alleges violation of the Pennsylvania Human Relations Act. Pa.Stat.Ann. tit. 43, §§ 951–63 (Purdon 1964 & Supp.1990) (hereinafter also referred to as "PHRA"). Count IV alleges violation of § 510 of Employee Retirement Income Security Act, 29 U.S.C. § 1140. The plaintiff has invoked this Court's jurisdiction pursuant to § 706 of Title VII, as amended, 42 U.S.C. § 2000e–5, and is apparently claiming that diversity jurisdiction exists for the alleged violations of the PHRA.

The defendant filed a motion to strike plaintiff's jury demand and claim for punitive damages under the PHRA in Count III of the plaintiff's second amended complaint. Count III contains the following prayer for relief and requests a jury trial.

Wherefore, it is respectfully requested that the court:

A. Declare the conduct of the defendant APC to be violations of the rights guaranteed to the plaintiff;

B. Direct defendant to reinstate plaintiff to her position, with back pay and all other benefits and increments to which she is entitled;

C. Order an award of money damages as against defendant APC sufficient to compensate plaintiff for the harm she has suffered and will suffer into the future;

D. Order an award of exemplary damages as against defendant APC sufficient to punish the defendant and to deter others similarly situated from like conduct in the future;

E. Award the plaintiff costs and a reasonable attorneys' fee.

(Plaintiff's Second Amended Complaint, pp. 13–14).

For the reasons that follow, this Court finds that punitive damages, sought by the plaintiff in subsection "D" of the plaintiff's prayer for relief in Count III, are available under the Pennsylvania Human Relations Act, and further finds that the plaintiff has a right to jury trial on her claims for legal relief under the Pennsylvania Human Relations Act.

Accordingly, the defendant's motion to strike plaintiff's jury demand and claim for punitive damages under the PHRA in

Count III of the plaintiff's second amended complaint will be denied.

## Punitive Damages

In Count III of her second amended complaint, in which she alleges that the defendant violated the PHRA, the plaintiff seeks "an award of exemplary damages as against defendant ... sufficient to punish the defendant and to deter others similarly situated from like conduct in the future." (Plaintiff's Second Amended Complaint, *supra*).

■■■ As this Court stated in *Cain v. Hyatt*, "[b]y its terms the PHRA authorizes significantly broader relief for victims of discrimination than does Title VII...." 734 F.Supp. 671, 685 (E.D.Pa.1990). Section 962(c) of the PHRA empowers a court to award "affirmative action ... or any other *legal* or equitable relief as the court deems appropriate." Pa.Stat.Ann. tit. 43, § 962(c) (emphasis added). The Pennsylvania Supreme Court has held that "legal or equitable relief" includes damages for humiliation and mental anguish, and that those types of damages are recoverable under the PHRA. *Pennsylvania Human Relations Commission v. Zamantakis*, 478 Pa. 454, 459, 387 A.2d 70, 73 (1978). Since punitive damages are a form of legal relief, this Court predicts that, on the basis set forth in *Zamantakis*, the Supreme Court of Pennsylvania would rule that punitive damages are recoverable under the Pennsylvania Human Relations Act. Furthermore, the plaintiff has sufficiently pleaded a basis for claiming punitive damages in that she has alleged that the defendant intentionally, willfully, and unlawfully terminated her employment and denied her benefits on the day after she was hospitalized due to complications in her pregnancy. As a result, the defendant's motion to strike plaintiff's claim for punitive damages under the PHRA will be denied.

## Jury Demand

■■ The Court of Appeals for the Third Circuit set forth the proper analytical framework for determining whether the plaintiff is entitled to a jury trial under a particular statute in *Cox v. Keystone Carbon, Co.*, 861 F.2d 390, 392–93 (3d Cir. 1988). As explained in *Cox*, this Court's analysis must begin with an examination of the language and legislative history of the statute, to determine if the legislature intended to create a right to jury trial under the statute. *Id.*, 861 F.2d at 393, *quoting Lorillard, Div. of Loew's Theatres, Inc. v. Pons*, 434 U.S. 575, 584, 98 S.Ct. 866, 872, 55 L.Ed.2d 40 (1978). If statutory analysis does not reveal legislative intent to provide the right to jury trial, the Seventh Amendment to the United States Constitution "must be examined to determine if it commands that a jury trial be provided." *Id.*, 861 F.2d at 393.

### a. Legislative Intent

The Supreme Court of Pennsylvania has not faced the issue of whether or not the Pennsylvania Legislature intended that a jury trial be provided upon demand under the PHRA. However, Judge Montemuro of the Superior Court has held that "the legislature did not intend to create a right to demand a jury trial when it enacted § 962(c) of the PHRA." *Murphy v. Cartex Corp.*, 377 Pa.Super. 181, 546 A.2d 1217, 1224 (1988). The basis of Judge Montemuro's holding appears to be that the PHRA is "modeled after Title VII of the Civil Rights Act of 1964," under which there is no right to a jury trial. *Id.*, 546 A.2d at 1224. Although it is indeed true that the PHRA to a large extent reflects the aims and substance of Title VII, in deciding whether a statutory right to a jury trial exists, it is the remedial provisions of the two laws that are crucial. *Lorillard, Div. of Loew's Theatres, Inc. v. Pons*, 434 U.S. 575, 584, 98 S.Ct. 866, 872, 55 L.Ed.2d 40 (1978).

In 1972, Congress amended Title VII to provide for bench trials exclusively in all Title VII actions. 42 U.S.C. § 2000e–5(f)(4). However, prior to that amendment, federal courts based their determinations that plaintiffs had no right to a jury trial under Title VII on the equitable nature of the remedial provisions of that act. *See, e.g., Johnson v. Georgia Highway Express, Inc.*, 417 F.2d 1122, 1125 (5th

Cir.1969) (holding that back pay was an integral part of Title VII's equitable remedies and that, therefore, no right to jury trial existed).

Conversely, in *Lorillard, Div. of Loew's Theatres, Inc. v. Pons,* the United States Supreme Court's examination of the remedial provision of the Age Discrimination in Employment Act of 1967 ("ADEA"), led it to hold that plaintiffs do have a right to a jury trial under the ADEA. 434 U.S. 575, 584, 98 S.Ct. 866, 872, 55 L.Ed.2d 40 (1978). In *Lorillard,* the United States Supreme Court recognized that there are important similarities between the aims and substantive prohibitions of the ADEA and Title VII, and that, in fact, "the prohibitions of the ADEA were derived *in haec verba* from Title VII." *Id.,* 434 U.S. at 584, 98 S.Ct. at 872. Nevertheless, the Court explained that "in deciding whether a statutory right to jury trial exists, it is the remedial and procedural provisions of the two laws that are crucial and there we find significant differences." *Id.* The remedial provision of the ADEA, like that of the PHRA and unlike that of Title VII, "empowers a court to grant '*legal* or equitable relief.' " *Id.,* 434 U.S. at 583, 98 S.Ct. at 871.

The term "legal" as it is used in § 962(c) carries with it considerable indicia of intent. As the United States Supreme Court explains in *Lorillard:*

> The word "legal" is a term of art: In cases in which legal relief is available and legal rights are determined, the Seventh Amendment provides a right to jury trial.
>
> \*　　\*　　\*　　\*　　\*　　\*
>
> We can infer, therefore, that by providing specifically for "legal" relief, Congress knew the significance of the term "legal," and intended that there would be a jury trial on demand....

434 U.S. 575, 583, 98 S.Ct. 866, 871, 55 L.Ed.2d 40 (1978).

The Pennsylvania Human Relations Act contains the following remedial provision in § 962(c):

> .... If the court finds that the respondent has engaged in or is engaging in an unlawful discriminatory practice charged in the complaint, the court shall enjoin the respondent from engaging in such unlawful discriminatory practice and order affirmative action which may include, but is not limited to, reinstatement or hiring of employes, granting of back pay, or any other *legal* or equitable relief as the court deems appropriate.

Pa.Stat.Ann.tit. 43, § 962(c) (Purdon 1964 & Supp.1990) (emphasis added).

The Supreme Court of Pennsylvania has already interpreted this provision to provide for legal relief in the form of damages, specifically, damages for humiliation and mental anguish. *Pennsylvania Human Relations Commission v. Zamantakis,* 478 Pa. 454, 387 A.2d 70, 73 (1978). This Court predicts that the Supreme Court of Pennsylvania, having recognized the availability of legal relief under the PHRA, would follow the analysis of the United States Supreme Court in *Lorillard* and would recognize the intent of the Pennsylvania Legislature to make a jury trial available under the PHRA. This Court predicts that the Supreme Court of Pennsylvania would rule that the Pennsylvania Legislature, in fashioning the PHRA with such sweeping remedial purpose and language, knew the significance of the inclusion of "legal" remedies and the determination of "legal" rights under the PHRA, and that, in providing for such, the legislature intended that there be a right to jury trial under the PHRA.

The Court notes that the defendant cites *Bereda v. Pickering Creek Industrial Park, Inc.,* 865 F.2d 49 (3d Cir.1989), in support of its motion to strike plaintiff's jury demand. Although in *Bereda,* the Court of Appeals does state that "neither Title VII nor the PHRA provide for trial by jury as a matter of right", 865 F.2d at 52, the Court found it unnecessary to decide the issue of whether a party claiming "legal damages" is entitled to a jury trial under the PHRA.

**b. Seventh Amendment**

■ Even if this Court were to determine that the state legislature did not in-

tend plaintiffs to have a right to jury trial under the PHRA, this Court's analysis could not end there. *Cox,* 861 F.2d at 393. The right to a jury trial in the federal courts "is to be determined as a matter of federal law in diversity as well as other actions." *Simler v. Conner,* 372 U.S. 221, 222, 83 S.Ct. 609, 610, 9 L.Ed.2d 691 (1963).

The federal policy favoring jury trials is of historic and continuing strength. Only through a holding that the jury-trial right is to be determined according to federal law can the uniformity in its exercise which is demanded by the Seventh Amendment be achieved. In diversity cases, of course, the substantive dimension of the claim asserted finds its source in state law, but the characterization of that state-created claim as legal or equitable for purposes of whether a right to jury trial is indicated must be made by recourse to federal law.

*Id.,* (citations omitted). The relationship between judge and jury is an "essential characteristic" of the federal system reserved to the "influence—if not the command—of the Seventh Amendment." *Byrd v. Blue Ridge Rural Electric Cooperative,* 356 U.S. 525, 537, 78 S.Ct. 893, 901, 2 L.Ed.2d 953 (1958). Professor Wright has explained that "the right of jury trial in federal court is governed entirely by federal law, and that state law may be disregarded. . . . State law may deny a jury trial in a case where the Seventh Amendment requires a jury trial." C. Wright, *The Law of Federal Courts,* p. 606–07 (4th ed.1983).

As a result, where statutory analysis does not reveal a legislative intent to provide a jury trial, the court "must determine if the [S]eventh [A]mendment dictates that a jury trial be provided upon demand." *Cox,* 861 F.2d at 393. The Seventh Amendment provides that, "[i]n Suits at common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved." U.S. Const. amend. VII. "The phrase 'common law', found in this clause, is used in contradistinction to equity and admiralty and maritime jurisprudence. . . ." *Id., quoting Parsons v. Bedford,* 28 U.S. (3 Pet.) 433, 446–

447, 7 L.Ed. 732 (1830). The Seventh Amendment clearly applies " 'to actions enforcing statutory rights, and requires a jury trial upon demand, if the statute creates legal rights and remedies, enforceable in an action for damages in the ordinary courts of law.' " *Id., quoting Curtis v. Loether,* 415 U.S. 189, 194, 94 S.Ct. 1005, 1008, 39 L.Ed.2d 260 (1974). Conversely, no right to jury trial exists under the Seventh Amendment where the rights and remedies created by the statute are explicitly equitable. *Id.*

The Supreme Court's most recent statement of the proper inquiry for determining whether a statutory cause of action creates legal or equitable rights and remedies holds:

To determine whether a particular action will resolve legal rights, we examine both the nature of the issues involved and the remedy sought. "First, we compare the statutory action to 18th-century actions brought in the courts of England prior to the merger of the courts of law and equity. Second, we examine the remedy sought and determine whether it is legal or equitable in nature." The second inquiry is the more important in our analysis.

*Chauffeurs, Teamsters & Helpers, Local No. 391 v. Terry,* 494 U.S. 558, 110 S.Ct. 1339, 1345, 108 L.Ed.2d 519 (1990), *quoting Tull v. United States,* 481 U.S. 412, 417–18, 107 S.Ct. 1831, 1835, 95 L.Ed.2d 365 (1987).

The first factor in this inquiry—a process referred to by Justice Brennan as "rattling through dusty attics of ancient writs"—has become somewhat of an anachronism in modern Seventh Amendment jurisprudence. *Local No. 391,* 110 S.Ct. at 1349 (Brennan, J., concurring). The Supreme Court has reiterated that characterizing the relief sought is the more important factor in determining whether the Seventh Amendment guarantees a jury trial under a particular statute. *Tull,* 481 U.S. at 421, 107 S.Ct. at 1837. In any event, the 18th-century courts of England did not recognize a cause of action for discriminatory employment practices, making the search

for an 18th century analogue to the PHRA as unhelpful as it is burdensome in the case at hand. *See Smith v. Barton*, 914 F.2d 1330, 1337 (9th Cir.1990) (finding that first factor in *Tull* inquiry is not persuasive authority either for or against right to jury trial in discrimination action). Nevertheless, insofar as the PHRA can be generally analogized to a combination of actions in tort and contract, pre-Seventh Amendment common law required a jury trial in such actions. C. Wright, *supra*, at p. 610.

A far greater aid to this Court's Seventh Amendment inquiry, and properly the crux of any Seventh Amendment analysis, is the nature of the remedy sought by the plaintiff. *Beard v. Braunstein*, 914 F.2d 434, 438 (3d Cir.1990), *citing Granfinanciera, S.A. v. Nordberg*, 492 U.S. 33, 109 S.Ct. 2782, 2793, 106 L.Ed.2d 26 (1989). As made clear in her prayer for relief in Count III, plaintiff seeks remedies that are both equitable, e.g., reinstatement, and legal, e.g., compensatory and punitive damages. *Protos v. Volkswagen of America, Inc.*, 797 F.2d 129, 138 (3d Cir.1986) (holding compensatory and punitive damages constitute legal remedies). Since the plaintiff seeks a determination of legal rights vis a vis the defendant, and since she seeks a legal remedy for the alleged violation of those rights, under the Seventh Amendment the plaintiff is entitled to a jury trial in federal court on her legal claims.

The Court notes that plaintiff's claims for equitable relief, joined with her claims for legal relief, do not defeat her right to jury trial under the Seventh Amendment. [I]f a "legal claim is joined with an equitable claim, the right to jury trial on the legal claim, including all issues common to both claims, remains intact. The right cannot be abridged by characterizing the legal claim as 'incidental' to the equitable relief sought." *Curtis v. Loether*, 415 U.S., at 196, n. 11, 94 S.Ct., at 1009, n. 11.

*Tull, supra*, 481 U.S. at 425, 107 S.Ct. at 1839.

Accordingly, for the reasons set forth above, this Court having predicted that the Pennsylvania Supreme Court will interpret the Pennsylvania Human Relations Act to provide for legal relief and, therefore, to give rise to the right to jury trial, and this Court having further found that the plaintiff seeks such legal relief under the Act in her second amended complaint, this Court holds that the plaintiff has a right to jury trial on her claims for legal relief under the Pennsylvania Human Relations Act as well as pursuant to the Seventh Amendment of the United States Constitution.

ORDER

AND NOW, this 8th day of March, 1991; Defendant, American Packaging Corporation, having filed a motion to dismiss and to strike; Defendant's motion to dismiss and to strike having been mooted by the filing of the Plaintiff's second amended complaint in all respects excepting Defendant's motion to strike Plaintiff's jury demand and claim for punitive damages under the Pennsylvania Human Relations Act; for the reasons set forth in this Court's Memorandum of March 7, 1991;

IT IS ORDERED: Defendant's motion to dismiss and to strike is DENIED.